**RODEN et al. v. FARMERS' NAT. BANK OF ARLINGTON. (No. 12140.)**

Court of Civil Appeals of Texas. Fort Worth. May 18, 1929.

Rehearing Denied June 22, 1929.

two years beginning January 1, 1926, and ending January 1, 1928. The land was leased for farming and pasturing purposes and was used by the tenant for those purposes. According to the terms of the lease, which was in writing, the lessee paid the lessor $300 in cash and agreed to pay one-third of the corn, one-fourth of the cotton, one-third of the hay, and one-half of all sums realized by the lessee from pasturing cattle on the land. The lessee further agreed to cut off the dead wood from the land and to share equally with the lessor all sums realized from the sale of such wood. The lessee took charge of the land under that contract and after cultivating those crops throughout the year 1926 and until October 1, 1927, when he abandoned the farm, leaving practically all the cotton and corn raised thereon during that year ungathered.

On December 30, 1926, Roden executed a chattel mortgage in favor of the First National Bank of Arlington, Tex., upon the crops to be grown by him on the farm above mentioned during the year 1927, also on certain mules, cattle, and farming implements owned by Roden and located on the farm. The mortgage was given to secure a promissory note of even date with the mortgage, in the principal sum of $1,558.89, and any other indebtedness that might be incurred by Roden to the bank thereafter.

After Roden had abandoned his crops as noted above, the bank offered to take charge of and harvest the crops, and, after paying the necessary expenses of so doing, to account to Mrs. Elliott for the rents and advances which might be due her from the tenant and apply the balance remaining to the liquidation of Roden's debts to it. That offer was declined by Mrs. Elliott, who thereupon undertook and did have the crops harvested, and, after paying the expenses of harvesting and deducting from the balance the amount due as her portion of the crops gathered, there remained in her hands the sum of $1,370.

This suit was instituted by the bank against Roden to foreclose its chattel mortgage on the crops raised by him in the year 1927; no foreclosure being prayed for as to other property covered by the mortgage such as cattle, mules, and farming implements. Mrs. Elliott and her son, J. K. Elliott, who was the manager of his mother's business and who was her authorized agent to represent her interests as against Roden and the bank, were also made defendants, upon allegations that they had converted to their own use the crops so gathered from the farm by them, which had been cultivated by Roden.

Mrs. M. E. Elliott and J. K. Elliott filed an answer in which a landlord's lien was claimed upon all the crops gathered and mar-

M. B. Harris, of Fort Worth, for appellant. Samuels, Brown, Foster & McGee, of Fort Worth, for appellee.

DUNKLIN, J. Mrs. M. E. Elliott leased to C. W. Roden 326 acres of land for a period of

keted, which lien was asserted to be superior to the mortgage lien of the bank. An itemized statement of the advances made to Roden by Mrs. Elliott for the purpose of enabling him to cultivate and market the crop was attached to the answer, and a landlord's lien on the crops was claimed to cover those advances, and Mrs. Elliott prayed that, as against the bank's claim, she be allowed credit for those advances and also for the portions of the crop due her under the rental contract as rents. Mrs. Elliott claimed a further credit of $606 for money paid by her to the bank to take up a note which Roden owed the bank. The note so taken up amounted to $500. It was taken up by a note in the same amount executed by Mrs. Elliott and later renewed with interest added, and principal and interest upon final maturity amounted to $606. The allegation made in her answer was to the effect that she was induced to take up that note then owing by Roden upon an agreement made by Mr. McNatt, the president of the bank, and acting for it, that Roden's indebtedness to her as the result of that transaction would be considered as an advancement to Roden for the purpose of making a crop, and would be secured by a landlord's lien on the crops to be raised by him during the year 1927.

Defendant Roden filed no answer.

The case was tried before the court without a jury, and judgment was rendered in favor of the bank against the defendant Roden for the sum of $3,003.40, with foreclosure of the chattel mortgage on the crops raised by Roden during the year 1927, and also against the defendant Mrs. Elliott for the sum of $795.34 as the proceeds of the crops converted by her to her own use and against which she had no valid landlord's lien. From that judgment Mrs. Elliott has prosecuted this appeal.

Judgment was also entered in favor of J. K. Elliott because of the fact that all of the transactions relative to marketing and gathering the crops were solely in the capacity of agent for his mother and therefore he is not liable; and plaintiff has made no complaint of that judgment in his favor. There was a further judgment in favor of Mrs. Elliott against Roden in the sum of $1,085 as the balance due her, and no complaint is made of that recovery.

■■ The evidence shows that the note for the principal sum of $500, which Roden owed the bank, and which was taken up by Mrs. Elliott, noted above, was for a debt incurred by Roden to the bank in the year 1925, prior to the date of Mrs. Elliott's lease to Roden, and therefore it cannot be said that that money was furnished by Mrs. Elliott to Roden to make the crops for the year 1927, within the provision of article 5222, Rev. St. 1925. Giving J. K. Elliott's testimony the broadest scope, it was to the effect that his

mother was induced to take up Roden's note to the bank by reason of an agreement made by Mr. McNatt, the president of the bank, that the landlord's lien would cover the amount so advanced. That agreement, if made, could not have the effect to create a landlord's lien, for two reasons: In the first place, the landlord's lien is a creature of the statutes arising from the use of land and the furnishing of supplies to the tenant by the landlord; and, even though Mr. McNatt might have supposed that such agreement would create a statutory lien, it could not be given that legal effect. Matthews v. Melasky (Tex. Civ. App.) 240 S. W. 641; Monroe v. Gaylor (Tex. Com. App.) 268 S. W. 724. In the second place, that agreement could not be given effect as a contract to give appellant a lien on the crops, independently of the statutes, since Roden, the tenant, was not a party to it.

Accordingly, we overrule appellant's contention that the court erred in refusing to allow her claim of a landlord's lien for the amount so taken up by her in behalf of Roden.

■ We overrule the further contention that appellant should have been allowed a further item of $84 for pasturing Roden's work stock during the year 1927, since, under our construction of the lease contract between appellant and Roden, he would have the right of pasturing his own work stock, or stock used by him in cultivating the land. The lease contained this provision:

"Lessee agrees to build and maintain all fences at his expense on the premises and in return is to receive one-half (½) of moneys received from pasturage of cattle, lessor to receive one-half (½) of pasturage. Lessee agrees to care for such cattle as may be personal property of lessor."

We believe that appellant's claim for pasturage would be limited to moneys received by Roden from pasturing cattle for other people, and that, in the absence of any restrictions against the same in the lease, he would have the right of pasturing all work stock used for cultivating the land. 24 Cyc. 1061, 1065; 36 Corpus Juris, 84.

■■ It is further contended by appellant that the court erred in refusing to allow her claim of landlord's lien for the following items: Price of farm truck sold to Roden, $200. One-half of the wood sold by Roden off the farm and not accounted for to appellant, $72. Amount paid Roden for labor performed by him in hauling and gathering the crop for 1927 after he had abandoned it and had been hired by J. K. Elliott to perform that work, $72. The amount for services rendered by J. K. Elliott in supervising and looking after the gathering of the crops of 1927, $65.

In appellant's brief it is stated, in effect, that the action of the court in refusing to allow those claims was without any support in

the evidence, and that the testimony introduced by plaintiff showed conclusively that those items were just and correct; that the truck was necessary for the harvesting of the crops and was sold to Roden before he abandoned the lease; that the amount claimed for wood was shown to be one-half of the amount actually received by Roden for wood sold; and that the services covered by the two other items were necessary expenses for the gathering of the crops. Appellee has cited no evidence to the contrary, and therefore we are authorized to accept appellant's statement to the effect that those items were proven beyond controversy, without undertaking to examine the entire statement of facts in order to determine whether or not those were controverted issues. See Rule 31 for Courts of Civil Appeals.

Accordingly, those assignments of error are sustained. Those four items aggregate $409, for which it appears appellant should have been given credit by the trial court.

Therefore, by reason of the errors pointed out, the judgment of the trial court in favor of the bank against the appellant, Mrs. Elliott, for the sum of $795.34, is reversed, and the cause will be remanded unless appellee bank shall, within 10 days from the date of this decision, file a remittitur in the sum of $409, indicated above. If such remittitur is so filed, then the judgment will be reformed so as to make the same effective, and, as reformed, affirmed. Otherwise the judgment of the trial court in favor of the bank against Mrs. Elliott will be reversed in its entirety and the cause remanded for further trial of all issues between the bank and Mrs. Elliott. In either event, the costs of appeal will be taxed against the appellee bank. The judgment in favor of the bank against Roden, and in favor of Mrs. Elliott against Roden, and in favor of J. K. Elliott, will be left undisturbed as final judgments.