**In re Alfred Delbert McCLOY, Debtor.**

**SOUTHWEST CATTLEMEN'S CREDIT CORPORATION, Plaintiff,**

v.

**Willard McCLOY and Alfred Delbert McCloy, Defendants.**

**Bankruptcy No. 293–20419–12. Adv. No. 295–2049.**

United States Bankruptcy Court, N.D. Texas, Amarillo Division.

March 5, 1997.

Terry A. Zelinski, Summerford & Zelinski, Attorneys at Law, Fayetteville, AR, for debtor.

Kimberly L. Allen, Hunter & Oelke, Dalhart, TX, for Willard McCloy.

Don L. Patterson, Hinkle, Cox, Eaton, Coffield & Hensley, Attorneys at Law, Amarillo, TX, for Beatrice McCloy.

Otis C. Shearer, Lemon, Shearer, Ehrlich, Phillips & Good, P.C., Attorneys at Law, Perryton, TX, for Southwest Cattlemen's Credit Corporation.

Walter O'Cheskey, Standing Bankruptcy Trustee, Lubbock, TX, Chapter 12 Trustee.

## MEMORANDUM OF OPINION ON VALIDITY AND PRIORITY OF LIENS

JOHN C. AKARD, Bankruptcy Judge.

Southwest Cattlemen's Credit Corporation (Southwest) brought this adversary proceeding to determine the validity and priority of liens on the farm equipment of the Debtor, Alfred Delbert McCloy (Delbert). Delbert's father, Willard McCloy (Willard) asserts an Agricultural Landlord's Lien on the equipment. The court finds that neither has a valid lien on the equipment.[1]

### FACTS

Beatrice and Willard McCloy are husband and wife. They have been farming in the Texas Panhandle for many years. They each conduct their own separate farming operations as Mrs. McCloy has separate property. Delbert is their adult son. Since the mid–1980's, he has lived within twelve miles of his parents and conducted his own farming and cattle operations. Even though the farming operations of Mrs. McCloy, Willard, and Delbert are separate, they worked closely together.

---

1. This court has jurisdiction of this matter under 28 U.S.C. § 1334(a), 28 U.S.C. § 157(a), and Miscellaneous Rule No. 33 of the Northern District of Texas contained in Order of Reference of Bankruptcy Cases and Proceedings *Nunc Pro Tunc* dated August 3, 1984. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(1) and (2)(B), and (K).

Prior to 1983, Delbert financed his farming and cattle operations at the Gruver State Bank. In 1983, he secured financing for his farming and cattle operations from Southwest. The bank transferred its liens on Delbert's equipment to Southwest, and Mrs. McCloy pledged her equipment to secure Delbert's obligations.

On December 18, 1985, Delbert filed the first of his three bankruptcies in this court. That was a Chapter 11 case which the court dismissed on November 13, 1989. The court relieved the automatic stay in that case to allow Southwest to proceed with a pending suit in Lipscomb County, Texas.

In September 1987, following a jury trial, the state district court in Lipscomb County, Texas granted Southwest a judgment against Delbert and Mrs. McCloy for $367,459.86. They appealed the judgment to the Court of Appeals for the Seventh District of Texas, which affirmed. The Texas Supreme Court denied a writ of error in November 1991.

In December 1989, Southwest filed suit in state district court in Hansford County, Texas to foreclose its lien on Delbert's cattle. The cattle were sold pursuant to court order. Disputes arose concerning the sale and the distribution of the proceeds. That matter was transferred to this court in the captioned case and was resolved by this court's Memorandum of Opinion and Judgment entered September 12, 1994 in adversary proceeding No. 294–2015.

Delbert filed a Chapter 12 proceeding in April 1991, which was dismissed in May 1991 on his motion. Delbert filed the captioned Chapter 12 case in July 1993. The Plan of Reorganization, confirmed January 11, 1994, valued Delbert's farm equipment at $30,000.00. The Plan noted Willard's claim for a lien on the equipment in the amount of $30,343.00 and Southwest's claim for a lien on the equipment in the amount of $353,823.00. The Plan contained the following provision:

Both of these creditors claim a lien in [Delbert's] farm equipment. The payment set forth will be paid to the Trustee and distributed to the creditor which the Court determines has the first lien in the equipment.

On June 1, 1992, Mrs. McCloy filed a Chapter 12 proceeding, No. 292–20468, in this court. The court confirmed her plan of reorganization by order entered October 21, 1992. Her Plan provided for payment of $135,000.00 to Southwest as a secured creditor for which debt she executed a new note and deed of trust.

On August 4, 1993, Southwest filed a partially secured and partially unsecured claim in this proceeding for $353,823.16. On January 11, 1994, Delbert filed an objection to that claim asserting various credits and defenses. By order entered March 3, 1994, the court continued the hearing on that objection indefinitely. Most of Delbert's objections to Southwest's claim were resolved by this court's September 12, 1994 judgment in adversary proceeding No. 294–2015. That judgment is final.

On October 17, 1994, Southwest filed an amended claim for $218,744.49 asserting a lien on the farm equipment. On March 27, 1996, Delbert filed an objection to the amended claim and requested that his objection be heard in connection with this adversary proceeding. The grounds for the objection are:

a. Mrs. McCloy and Delbert are jointly liable on the indebtedness to Southwest. As part of her Chapter 12 case, Mrs. McCloy gave Southwest a note for $135,000.00 secured by her separate property. Delbert assets that his obligation to Southwest should be reduced by that amount.

b. Southwest's lien claim is not properly perfected under § 9.401(f) of the Texas Business and Commerce Code. Delbert asserts that this unperfected security interest is not effective against him because he is a debtor-in-possession under Chapter 12 of the Bankruptcy Code.

On February 29, 1996, Willard filed an amended claim for $30,343.02 secured by an Agricultural Landlord's Lien on equipment pursuant to § 54.001 of the Texas Property Code. On March 6, 1996, Southwest filed an objection to Willard's claim and requested that the objection be heard with this adversary proceeding. The objection asserted

that the "documents attached to the proof of claim fail to identify the propoerty [sic] on which the various parts and labor were placed or performed." The objection notes Southwest's claim of a security interest in the equipment and states that if Willard's claim of a lien is valid, it is subordinate to Southwest's lien.

On December 21, 1995, Southwest filed the captioned adversary proceeding to determine the validity and priority of the liens claimed by Southwest and Willard on Delbert's equipment. The documents introduced at trial show that on May 1, 1983, Delbert executed a security agreement in favor of Southwest in which he granted a lien on "all machinery and equipment now owned or hereafter acquired, including but not limited to ..." the equipment described on an exhibit to the security agreement. Southwest properly filed a UCC–1 financing statement in the records of the County Clerk of Hansford County, Texas. The financing statement showed its lien on "[a]ll Cattle, feed, grain, machinery & equipment now owned or hereafter acquired." Southwest filed a continuation statement of its September 14, 1983 financing statement in the Office of the Secretary of State of Texas, on August 8, 1988. The continuation statement did not describe the collateral, but noted that it was a continuation of the previously-filed financing statement. Southwest filed another continuation statement, without a description of collateral, in the office of the Secretary of State on April 19, 1993.

On May 12, 1983, Gruver State Bank transferred its financing statement which acknowledged its lien on, among other things, "[a]ll farm equipment now owned & hereafter acquired" to Southwest. Southwest then filed a continuation statement in the Office of the County Clerk of Hansford County, Texas. Southwest filed a continuation statement on November 14, 1988 in the Office of the Secretary of State of Texas. The continuation statement did not describe the collateral, but noted that it was continuing the previously-filed financing statement.

Willard testified that he leased to Delbert two farms which were known by the Agricultural Stabilization and Conservation Service (ASCS) as farms number 631 and 858. He introduced statements from ASCS for the years 1989, 1990 and 1991 showing Willard as the owner and Delbert as the operator of farm 631. He explained that the operator was the tenant. He also introduced ASCS statements for those years with respect to farm 858 which showed Willard as both owner and operator. Willard stated that was because he got a larger crop allotment than Delbert.

Willard testified that for many years he verbally leased land to Delbert. In addition, he introduced three written leases dated September 1, 1992, January 1, 1993, and August 15, 1993, all relating to portions of farm 631. The September 1, 1992 and January 1, 1993 leases were handwritten leases for one crop year. The August 15, 1993 lease is from year to year. None of the leases refer to Willard providing for repairs on Delbert's equipment. No leases concerning farm 858 were introduced into evidence.

Willard introduced a number of invoices from various suppliers dated between 1990 and 1993 which he stated represented parts and labor used to repair Delbert's equipment. None of the invoices indicated the specific equipment for which the parts or services were provided. Willard testified that he paid all of these invoices. Willard asserted that he had made specific dollar amounts of repairs on certain items of equipment, but he did not tie any of the invoices to specific pieces of equipment. Delbert testified that he felt obligated to repay Willard for the repairs, but neither of them made any mention of a lien at the time the invoices were paid. No records were kept showing the amounts Delbert owed Willard.

## APPLICABLE STATUTES

**11 U.S.C. § 544.[2] Trustee as lien creditor and as successor to certain creditors and purchasers.**

(a) The trustee shall have, as of the commencement of the case, and without regard to any knowledge of the trustee or any

---

2. The Bankruptcy Code is 11 U.S.C. § 101 *et seq.*

creditor, the rights and powers of, or may avoid any transfer of property of the debtor or any obligation incurred by the debtor that is voidable by—

(1) a creditor that extends credit to the debtor at the time of the commencement of the case, and that obtains, at such time and with respect to such credit, a judicial lien on all property on which a creditor on a simple contract could have obtained such a judicial lien, whether or not such a creditor exists . . .

TEX.BUS. & COM.CODE ANN. § 9.104(2) (Vernon 1991).[3] **Transactions Excluded From Chapter.**

This chapter does not apply

. . . .

(2) to a landlord's lien. . . .

TEX.BUS. & COM.CODE ANN. § 9.401(f) (Vernon 1991). **Place of Filing, Erroneous Filing; Removal of Collateral**

A continuation statement filed to continue a security interest perfected before September 1, 1985, in collateral that is equipment used in farming operations . . . must be filed in the office of the Secretary of State, and must contain the information contained in the original financing statement, in addition to the information required for a continuation statement under § 9.403 of this Code.

TEX.PROP.CODE ANN. § 54.001 (Vernon 1995). **Lien**

A person who leases land or tenements at will or for a term of years has a preference lien for rent that becomes due and for the money and the value of property that the landlord furnishes or causes to be furnished to the tenant to grow a crop on the leased premises and to gather, store, and prepare the crop for marketing.

TEX.PROP.CODE ANN. § 54.002 (Vernon 1995). **Property to Which Lien Attaches**

(a) Except as provided by Subsections (b) and (c), the lien attaches to:

(1) the property on the leased premises that the landlord furnishes or causes to

be furnished to the tenant to grow a crop on the leased premises; and

(2) the crop grown on the leased premises in the year that the rent accrues or the property is furnished.

TEX.PROP.CODE ANN. § 54.004 (Vernon 1995). **Duration of Lien**

The lien exists while the property to which it is attached remains on the leased premises and until one month after the day the property is removed from the premises.

## DISCUSSION

### Credit on the Claim

Delbert's objections to Southwest's original and amended claims assert that a credit of $135,000.00 should be allowed because of the secured note which Mrs. McCloy gave to Southwest in her Chapter 12 case. This issue was resolved by the court in its September 12, 1994 Memorandum of Opinion and Judgment in adversary proceeding No. 294–2015. On page 6 of the Memorandum, the court stated:

. . . Southwest may claim the full unpaid balance on the Lipscomb County judgment in both cases. . . . Southwest is only entitled to be paid once on its Lipscomb County judgment. Both cases are being administered by the Standing Chapter 12 Trustee. He can monitor the payments in these case and, if the total principal paid to Southwest satisfies its claim in full . . . the Trustee shall file an appropriate objection to the balance of Southwest's claims.

### Southwest's Lien Claim

■ Does Southwest hold a perfected security interest in Delbert's farm equipment? The court has not found nor have the parties directed the court to any Texas case law discussing whether the lack of a description of collateral in a continuation statement subject to TEX.BUS. & COM.CODE ANN. § 9.401(f), results in an unperfected security interest.

Delbert seeks to avoid Southwest's lien under 11 U.S.C. § 544. Under 11 U.S.C.

---

**3.** The Texas Business and Commerce Code is the Texas adaptation of the Uniform Commercial Code.

§ 544(a)(1) a trustee in bankruptcy has the rights of an attaching lien creditor. Thus, if Southwest's lien is not properly perfected, it could be cut off by a trustee in bankruptcy. This court previously found that a debtor-in-possession in a Chapter 12 proceeding has the rights of a trustee in bankruptcy. *In re Hartman*, 102 B.R. 90, 92–93 (Bankr. N.D.Tex.1989). Thus Delbert's action is appropriate and the issue becomes whether Southwest's lien is properly perfected.

Southwest acknowledges that its continuation statements filed in the office of the Secretary of State of Texas did not conform to the requirements of TEX.BUS. & COM.CODE ANN. § 9.401(f). That section states that continuation statements of the type involved in this case "must contain the information contained in the original financing statement." The continuation statements filed by Southwest did not contain a description of the collateral which is required in a financing statement by TEX.BUS. & COM.CODE § 9.401(f).

Southwest urges that the continuation statements were sufficient to put a prospective lender on inquiry. Thus, they were sufficient to prevent avoidance under 11 U.S.C. § 544 (citing *National Bank v. West Texas Wholesale Supply Co. v. RepublicBank (In re McBee)*, 714 F.2d 1316 (5th Cir.1983)). The *McBee* court said:

The framers of the [Texas Business & Commerce] Code envisioned a simplified "notice" filing system to avoid the rigid technicalities which might otherwise pose unnecessary pitfalls in the path to perfection. As we have previously stated, in analyzing the Code as similarly adopted in another jurisdiction:

The purpose of the filing system is to give notice to creditors and other interested parties that a security interest exists in property of the debtor. Perfect accuracy, however, is not required as long as the financing statement contains sufficient information to "put any searcher on inquiry." The emphasis of the Uniform Commercial Code is thus on commercial realities rather than on corporate technicalities. Section 9–402(5) reflects this emphasis by providing: "A financing statement substantially com-

plying with the requirements of this section is effective even though it contains minor errors which are not misleading." (citing *In re Glasco, Inc.*, 642 F.2d 793, 795) (5th Cir.1981).

Therefore, the critical inquiry in assessing whether a security interest is perfected is whether a reasonably prudent subsequent creditor would have discovered the prior security interest.

*Id.* at 1321. (internal citations omitted).

Southwest states that anyone searching the records of the office of the Secretary of State concerning Delbert would have found its continuation statements. Although the continuation statements did not give a description of the collateral, they contained Delbert's name and address, Southwest's name and address and the county filing information of the original financing statements. Southwest thinks that information is sufficient to put a searcher on inquiry and that full information about Southwest's lien could have been secured from Delbert, Southwest, or by resorting to the original financing statement in the appropriate county. Although the County Clerk may destroy a lapsed financing statement, the Clerk must retain a microfilm copy of it. TEX.BUS. & COM.CODE § 9.403(c) (Vernon 1991).

Southwest's arguments are troubling to the court for three reasons. First, the cases cited by Southwest all dealt with a financing statement under TEX.BUS. & COM.CODE ANN. § 9.402. That section contains a "substantial compliance" provision in (e) which reads:

A *financing statement* substantially complying with the requirements *of this section* is effective even though it contains minor errors which are not seriously misleading.

(emphasis added). The case before the court deals with a continuation statement filed under TEX.BUS. & COM.CODE ANN. § 9.401. That section does not contain a "substantial compliance" provision.

Second, the Texas Legislature provided in TEX.BUS. & COM.CODE ANN. § 9.401(f) that a continuation statement of the type involved in this case "*must* contain the information contained in the original financing state-

ment." (emphasis added). Southwest's argument would have the effect of writing that provision out of the statute. This court cannot ignore a mandatory requirement of the statute.

Third, although the requirements of financing statements and continuation statements are minimal, both Fifth Circuit and Texas authority instruct that they should be followed.

A Texas Court of Appeals spoke directly to the description of collateral when it said:

> We do not believe it unduly burdensome to require one seeking to be secured under, by and through the TEX.BUS. & COM.CODE, to describe the collateral subject to their security interest in an unambiguous and clear manner. We believe that any ambiguity or confusion resulting from a description of collateral, or *the lack thereof,* should be construed strictly against the party seeking to perfect a lien on intended collateral.

*Chase Manhattan Bank v. J & L General Contractors, Inc.,* 832 S.W.2d 204, 211 (Tex. App.—Beaumont 1992, no writ) (emphasis added). The court rejected as time consuming and "speculative" the fact that the parties could be contacted for a further description of the collateral. *Id.* at 211.

The Fifth Circuit quoted with approval the United States District Court decision *In re Murray,* 2 U.C.C.Rep. 667 D.Ore.1964 when it said:

> When the state legislature swept away all statutes and judicial precedents concerning secured transactions in personal property, tangible and intangible, existing and future acquisitions, it never intended that the simpler requirements could be ignored. The process of simplification of statutory procedures does not give license to omit one of the simpler requirements.

*Republic Nat'l Bank vs. Fitzgerald (In re E.A. Fretz Co.),* 565 F.2d 366, 373 (5th Cir. 1978).

In *Sommers v. IBM,* 640 F.2d 686 (5th Cir.1981) the Fifth Circuit pointed out that a financing statement must be signed by the debtor. It held ineffective a contract of sale filed as a financing statement which was signed by a guarantor but not by the debtor.

This court finds that the requirement of TEX.BUS. & COM.CODE ANN. § 9.401(f) that the continuation statement "must contain the information contained in the original financing statement" is one of the "simpler requirements" which cannot be ignored. Therefore, Delbert can avoid Southwest's lien under 11 U.S.C. § 544(a)(1). Neither Delbert nor Willard objected to the allowance of Southwest's claim as an unsecured claim.

## Willard's Lien Claim

■ The next issue concerns the existence of an Agricultural Landlord's Lien on Delbert's equipment. The court has not found nor have the parties directed the court to any Texas case law discussing whether a landlord who pays for repairs on his tenant's farm equipment holds a landlord's lien that attaches to the equipment under TEX.PROP. CODE ANN. § 54.001 and § 54.002.

■ TEX.PROP.CODE ANN. § 54.001 creates a landlord's lien for one who leases land to a tenant to grow a crop. The landlord has a preference lien for money and the value of property that the landlord furnishes or causes to be furnished to the tenant to grow a crop on the leased premises and to gather, store, and prepare the crop for marketing. In *Red River Nat'l Bank v. Sproles,* 180 S.W. 660 (Tex.Civ.App.—Texarkana 1915, no writ), the court granted the landlord a lien on crops for furnishing his tenant with groceries for the tenant's family and feed for the tenant's teams. The court considered the supplies to be property the landlord caused to be furnished to enable the tenant to grow a crop. In *Roden v. Farmers Nat'l Bank,* 19 S.W.2d 331 (Tex.Civ.App.—Fort Worth 1929, no writ), the court granted the landlord a lien for a truck sold to the tenant, for one-half the value of wood sold by the tenant off the leased premises, and for the value of services, as necessary services furnished the tenant to gather a crop. Texas courts allow supplies, equipment, and services to meet the requirement of property caused to be furnished by the landlord to enable the tenant to grow a crop. This broad interpretation must also include payments for repair of farm equipment as services supplied by the

landlord which enable the tenant to grow a crop.

TEX.PROP.CODE ANN. § 54.002(a) provides that a lien attaches to the tenant's crops and to the property on the leased premises that the landlord furnished or caused to be furnished. Thus, the statute gives the landlord an option as to whether the lien attaches to the crops or to the property.

Willard testified that he paid for repairs to Delbert's farm equipment from 1989 to 1993. During that time Willard also had his own farm equipment repaired. When he received the repair bills, Willard simply paid them. At the time of the repairs, no record was made to show which repairs were made to Delbert's equipment and which repairs were made to Willard's equipment. There was no accounting made of the amounts which Delbert owed Willard. There is no evidence that Willard ever demanded payment from Delbert. In preparation for this trial, Willard reviewed his repair bills and attempted to pick out the ones he thought related to Delbert's equipment. Recalling the details of transactions more than a year old is difficult. Willard's attempt to base his claim upon the details of transactions which occurred more than three years before and about which he kept no written record, is speculation. The court finds that his testimony on this point is not credible.

Willard told the ASCS that he was the owner and operator of farm 858. He testified in the trial of this matter that he leased farm 858 to Delbert and just told the ASCS that he was the operator so he could get a larger crop allotment. Which should the court believe? Frankly, it does not matter, because by changing his story, Willard casts a cloud on his credibility. Delbert testified he needed the repairs to finish his crops, but offered no specifics. Such a general statement does not persuade the court that the repairs were necessary to the completion of Delbert's crops.

The lien attaches to "property on the leased premises that the landlord furnishes or causes to be furnished to the tenant to grow a crop on the leased premises" and remains on the property up to one month after it is removed. TEX.PROP.CODE ANN. § 54.002(a)(1), 54.004. There was no evidence that the equipment in question was on the leased premises at the time of trial, nor that it had been removed within the last month.

Southwest's objection to Willard's claim in this proceeding related only to Willard's assertion of a lien. Southwest did not object to the allowance of Willard's claim as an unsecured claim.

## CONCLUSIONS

Delbert's objection to Southwest's claim seeking a credit for the $135,000 note executed by Mrs. McCloy is denied because this the court previously ruled on that matter and the order is final. Southwest's claim of a lien on Delbert's equipment is denied because Southwest failed to comply with TEX.BUS. & COM. CODE § 9.401(f) and Delbert may avoid the lien under 11 U.S.C. § 544(a)(1). Southwest's amended claim is allowed as a general unsecured claim.

Willard's claim of an Agricultural Landlord's Lien is denied because (1) he failed to identify the equipment to which his purported lien attached, (2) he did not establish the amount of his claim against equipment, (3) he did not establish that the repairs were furnished to enable Delbert to grow a crop or to gather, store or prepare a crop for marketing, and (4) he did not establish that the equipment to which his purported lien attached was still on the leased property or that it had been removed within the last month. Willard's claim is allowed as a general unsecured claim.

ORDER accordingly.[4]

---

4. This Memorandum shall constitute Findings of Fact and Conclusions of Law pursuant to FED. R.BANKR.P. 7052 which is made applicable to Contested Matters by FED.R.BANKR.P. 9014. This Memorandum will be published.